# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

WARREN ZEISLOFT and THREE Z's,      )
                                     )
    Defendants-below,            )
    Appellants,                  )
                                     )
            v.             )      C.A. No. CPU4-14-001133
                                     )
LAWRENCE MERGENTHALER,               )
                                     )
    Plaintiff-below,             )
    Appellee.                    )

Submitted: May 7, 2015
Decided: June 8, 2015

Benjamin C. Wetzel, III Esquire
2201 West 11th Street
Wilmington, DE 19805
*Attorney for Appellants*

John S. Malik, Esquire
100 East 14th Street
Wilmington, DE 19801
*Attorney for Appellee*

## <u>DECISION AFTER TRIAL</u>

**RENNIE, J.**

# INTRODUCTION

This is an appeal from an April 16, 2014 decision of the Justice of the Peace Court No. 13 finding in favor of Plaintiff-below, Appellee Lawrence Mergenthaler ("Mergenthaler") in the amount of $15,000.00. The case involves a breach of contract action arising from an oral agreement to lease commercial space in Mergenthaler's lot to Defendant-below, Appellants Warren Zeisloft and Three Z's, Inc. ("Zeisloft", "Z's", collectively "Appellants"). Appellants filed an appeal to the Court of Common Pleas on April 25, 2014. Mergenthaler filed the Complaint on Appeal seeking $21,758.06.[1] Appellants filed an Answer denying the allegations of the Complaint on Appeal. Trial was held on May 7, 2015. The parties stipulated that a contract existed and that Appellants owe storage fees. However, Appellants seek set-off of the amount owed, based on Mergenthaler's alleged use of their equipment without permission, and subsequent restriction of Appellants' access to the equipment.[2] This is the Court's Opinion on the relief sought by the parties.

# FACTUAL BACKGROUND

## Creation of the Lease

Three witnesses testified on behalf of Mergenthaler.[3] Zeisloft testified for the defense.[4] The testimony is scattered and at times, inconsistent. However, when the testimony is distilled to

---

[1] The amount sought increased because Appellants' vehicles remained in storage on Mergenthaler's lot until May 6, 2015, the day before trial. Mergenthaler's damages have fluctuated over the life of this action; however, at trial Mergenthaler also amended his requested damages to reflect an accounting oversight.

[2] At trial, Appellants alleged that Mergenthaler unlawfully authorized the use of Appellants' crane to install a dump truck frame. Appellants also assert that Mergenthaler prevented the removal of their equipment by placing firewood and a family vehicle at either end of one of Appellants' trucks. In addition, Appellants claim that other tenants removed equipment from one of their trucks, rendering the vehicle inoperable.

[3] Lawrence Mergenthaler, the owner of the lot, testified in his case-in-chief. Next, David Leager testified. Leager owns D. Leager Construction, Inc. and hauls cargo for other contractors. He has stored several dump trucks at Mergenthaler's lot since 1988. He knows Zeisloft because his trucks were often parked and stored next to Zeisloft's equipment. Finally, Russell Eaton testified. Eaton is a mechanic and former line worker at General Motors. He operates a garage on Mergenthaler's lot and has done so for the last fifty years. He has known Zeisloft for the last twenty years because he worked on Zeisloft's trucks from time to time.

[4] Warren 'Wilbur' Zeisloft owns a small construction company and has stored his equipment and vehicles at Mergenthaler's lot since February 1, 1993.

its bare essence, the factual record is as follows: Mergenthaler owns a lot at 1000 Stanton Road in Wilmington, Delaware, which he leases to business entities for long-term storage of commercial vehicles and equipment. On February 1, 1993, Mergenthaler orally agreed to store Zeisloft's cranes and other vehicles at his lot for $500/month. In 1994, the parties verbally agreed to decrease the storage fee to $300/month.[5] The storage fee was charged in three to six month increments with Zeisloft tendering payment approximately three times per year.[6] Zeisloft fell behind in payments. According to Mergenthaler, the last payment was received on January 15, 2011, for $2,000.00, leaving a remaining balance of $7,300.00 at that time.[7]

The Dispute

According to Mergenthaler, at some point in 2011, Zeisloft approached him and stated that Russell Eaton and David Leager, longtime lessees of Mergenthaler, had used Zeisloft's crane without permission. Mergenthaler asked them about it and they denied Zeisloft's accusation.[8]

Zeisloft also complained that other occupants of the lot were removing equipment from his trucks. Specifically, Zeisloft noted that his boom truck was missing its tool box, a radiator, the big lifting block, its accompanying swivel-arm, and the passenger cabin.[9] Additionally, he claimed that the boom truck sustained damage to the front left wheel during storage.[10] According to Mergenthaler, Zeisloft never approached him concerning the equipment removal and damage to the vehicles. Leager testified that Zeisloft never said anything to him about removing parts

---

[5] Zeisloft testified that the parties had a lump-storage arrangement whereby the storage rate remained the same regardless of whether he stored one vehicle or ten.

[6] Appellee's Ex. 1.

[7] Id. The Complaint on Appeal alleges that the final payment was received on October 7, 2011, via check # 103. At trial, Mergenthaler testified that it was received on January 15, 2011, via check # 2156, also reflected in Exhibit 1. The Court brought the discrepancy to the attention of Mergenthaler's counsel; however, he could not explain the inconsistency.

[8] Zeisloft testified that he pulled into the lot and witnessed Mergenthaler standing along the road watching Eaton operate the crane to attach a dump truck frame to a dump truck. He asked Eaton about the use of the crane and, Eaton replied that he had permission from Mergenthaler. Mergenthaler and Eaton deny that the event happened.

[9] Appellee's Ex. 3-2.

[10] Id. Zeisloft's later testimony suggests that the boom truck had sustained damage to the front left wheel prior to storage.

3

to the vehicles. Leager testified that Zeisloft never said anything to him about removing parts from his vehicles and denied ever doing so. Eaton testified that Zeisloft complained once that people were tampering with his equipment, but that he never heard anything else.

Further, Zeisloft testified that at some point he attempted to move his vehicles, but found that one of his cranes was blocked in by a green bread truck. Zeisloft complained to Eaton that he wanted the green bread truck removed from the lot; however, Mergenthaler states that the bread truck was current on storage fees and consequently, had a right to remain on the lot. Mergenthaler testified that in reality, Zeisloft's crane was actually blocking other customers' vehicles.[11] The customary procedure was that customers typically came to Mergenthaler if other lot users were blocking access to equipment and Mergenthaler would then contact the offending user to clear the blockage. Zeisloft never made a complaint to Mergenthaler, either verbally or in writing, that he could not access the crane. Moreover, Mergenthaler testified that the crane has been sitting in the same spot since 2011 as pictured in Appellee's Exhibit 3-4.[12]

Additionally, Zeisloft testified that his green dump truck was blocked in by firewood and Mergenthaler's 1953 International R110 pickup truck.[13] Zeisloft testified that the R110 pickup was finally removed in May 2011 and the firewood in July 2011. Eventually, Zeisloft decided that he would terminate the agreement and remove his cranes and equipment from Mergenthaler's lot.

Cessation of Rent

In January 2011, Zeisloft ceased paying rent, but continued to store his equipment on Mergenthaler's lot. Zeisloft's rationale for not removing his other vehicles, despite his

---

[11] *See* Appellee's Ex. 3-4.
[12] *Id.* Exhibit 3-4 shows that Zeisloft's crane is blocking the green bread truck. Further, upon a review of the evidence submitted, none of Zeisloft's vehicles appear to be restricted.
[13] *See* Appellee's Ex. 3-3.

4

dissatisfaction, was based on the lump-storage arrangement, whereby he would still be charged $300.00/month because the blocked-in vehicle remained on Mergenthaler's lot. Zeisloft testified that he verbally communicated his intention to terminate the lease to Mergenthaler after his final payment in January 2011.

Mergenthaler testified that Zeisloft had made the threat that he was moving his equipment out for years, but never followed through on it. Over the life of the agreement, Zeisloft never provided written notice of his complaints, requests for removal, or his ultimate termination of the storage agreement. Further, at the time of the last payment in January 2011, Zeisloft was more than 2.5 years in arrears on his storage fees.[14] As a result, from that time, Mergenthaler began sending Zeisloft computerized statements and invoices.[15] Despite receiving the statements and invoices, Zeisloft did not make any further payments beyond the January 2011 payment. As a result, Mergenthaler initiated this action.

## DISCUSSION

To prevail on a claim for breach of contract, the plaintiff must establish by a preponderance of the evidence that: (1) a contract existed between the parties; (2) the defendant breached an obligation imposed by the contract; and (3) the plaintiff suffered damages as a result of that breach.[16]

### A. Mergenthaler's Breach of Contract Claim

The parties agree that a lease – and therefore a contract – existed. The parties also agree that Appellants ceased payment of their storage fees since January 2011. Where the parties disagree is on the amount of damages owed by Appellants for failure to pay the storage fees. To

---

[14] *See* Appellee's Ex.1 – 2-16.

[15] *Id.* The statements reflect Zeisloft's current mailing address. The most recent statement was issued on May 5, 2015.

[16] *Gregory v. Frazer*, 2010 WL 4262030, *1 (Del. Com. Pl. Oct. 8, 2010); *VLIW Technology, LLC v. Hewlett-Packard, Co.*, 840 A.2d 606, 612 (Del. 2003).

prove his damages, Mergenthaler introduced the ledger documenting storage fees charged to Appellants from the inception of the lease in February 1993 to the last payment received in January 2011.[17] The ledger shows a past due balance of $7,300.00 as of the receipt of Zeisloft's $2,000.00 January 15, 2011 payment.[18] In addition, Mergenthaler introduced statements and invoices showing balances accrued in three-month intervals from January 15, 2011 to May 6, 2015.[19] There is no dispute concerning the amounts outstanding on Zeisloft's account to Mergenthaler. Accordingly, the Court finds that Mergenthaler has proven his claim for breach of contract. However, Zeisloft disputes that he is obligated to make all of the payments set forth in the invoices.

## B. Appellants' Set-off Claim

Appellants argue that Mergenthaler's actions over the course of the lease, specifically (1) Mergenthaler's alleged approval of the unauthorized use of Zeisloft's crane; (2) the incontinent removal of equipment from Zeisloft's trucks; and (3) Mergenthaler's attempt to restrict Zeisloft's access to his equipment by blocking it with the R110 pickup and firewood, when viewed together, constitute a material breach of contract excusing Appellants' duty to perform. It is on this argument that Appellants base their defense of set-off.[20] Appellants' argument is unpersuasive.

---

[17] *See* Appellee's Ex.1.

[18] *Id.* Although the ledger is handwritten, Appellants did not dispute its accuracy.

[19] *See* Appellee's Exhibits 2-1 – 2-16. *See also* Appellee's Exhibits 3-1 – 3-5. Mergenthaler presented photographs and testimony at trial that Zeisloft's vehicles were present on the property until May 6, 2015.

[20] In a case where a defendant invokes the defense of recoupment, otherwise known as set-off, he carries the burden of proof to show his damages. *See Claringbold v. Newark Garage & Electric Co.*, 97 A. 386, 387 (Del. Super. 1915).

6

It is certainly true that under Delaware law, a material breach of contract obviates the non-breaching party's duty of performance under the contract.[21] However, a finding of material breach requires much more than mere violation of a contract term. As stated by *Williston*:

> [F]or a breach of contract to be material, it must go to the root or essence of the agreement between the parties, or be one which touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract. A breach is "material" if a party fails to perform a substantial part of the contract or one or more of its essential terms or conditions.[22]

In this case, the evidence and testimony before the Court does not support Appellants' claim for set-off. Here, there is little testimony or evidence which shows that Mergenthaler's actions described above, if they did occur, disturbed the fundamental purpose of the contract. During Mergenthaler's case-in-chief, Mergenthaler, Leager, and Eaton denied each of Zeisloft's claims. Moreover, Zeisloft did not present any persuasive evidence documenting the alleged breaches or rebutting Appellee's denials.

In contrast, Mergenthaler presented testimony and evidence which shows that Zeisloft's vehicles and equipment were freely accessible to him; that Mergenthaler never used the equipment without Zeisloft's approval; and that although Zeisloft complained to Mergenthaler once, concerning the green bread truck after his return from California, his sole complaint was invalid. Without more, the Court cannot find that a material breach of contract occurred, and therefore, cannot grant Appellants an award that would set-off the damages they owe for their breach of the lease agreement.[23]

---

[21] *See, e.g., Biolife Solutions, Inc. v. Endocare, Inc.*, 838 A.2d 268, 278 (Del. Ch. 2003).

[22] 23 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 63:3 (4th ed. 2002) (internal citations omitted).

[23] Although there may be some truth to Zeisloft's accusations, there is simply not enough evidence in the record before the Court to support a reduction in damages based on the allegations.

## C. The Court's Damages Calculation

Mergenthaler seeks judgment in the amount of $21,758.06 for back rent. At trial, Appellants agreed that they did not pay the storage fees. Appellants also stipulated that the monthly amount of storage fees charged after the 1994 oral modification of the lease is $300. Further, Appellants admit that, at a minimum, they owe $7,300.00, comprising the past-due balance at the time of the January 15, 2011 payment.[24] Therefore, the Court's damages calculation begins with that amount.

According to the statements and invoices presented by Mergenthaler, from January 15, 2011 to May 6, 2015, Appellants incurred $16,200.00 in storage fees. However, there are inconsistencies in the statements and invoices. Specifically, the Court notes that Appellee's Exhibit 2-8 lists a payment on October 7, 2011 for 2,000.00. Further, Mergenthaler testified that Zeisloft removed his final vehicle from the lot on May 6, 2015, one day before the trial, yet the final invoice lists charges for the full months of May and June 2015. Thus, the storage fees in May 2015 will be prorated based on Appellants' partial occupancy for the period, totaling $58.06. Also, the Court will exclude the storage fee for June 2015 from the rent calculation. Additionally, the October 7, 2011 payment for $2,000.00 decreases the charges incurred for this period to $14,258.06. When added to Appellants' prior balance of $7,300.00, the Court finds Appellants jointly and severally liable for damages totaling $21,558.06.

---

[24] *See* Appellee's Ex. 1.

8

## CONCLUSION

For the foregoing reasons, the Court finds in favor of Appellee Lawrence Mergenthaler and against Appellants Warren Zeisloft and Three Z's, Inc., jointly and severally, in the amount of $21,558.06, plus post-judgment interest at the rate of 6% per year until paid in full.

**IT IS SO ORDERED this 8th day of June, 2015.**

Sheldon K. Rennie,
Judge